# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK, d/b/a BALBOA CAPITAL CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREAT LAKES LOGISTICS AND TRANSPORTATION LLC, et al.,<br><br>　　　　　Defendants. | Case No. SA CV 23-2293 FMO (JDEx)<br><br>**ORDER RE: MOTION FOR DEFAULT JUDGMENT** |

Having reviewed and considered all the briefing filed with respect to Ameris Bank's, doing business as Balboa Capital Corporation, ("plaintiff") Motion for Final Default Judgment Against Defendants (Dkt. 16, "Motion") and the hearing held on April 18, 2024,[1] the court concludes as follows.

## BACKGROUND

Plaintiff filed the instant action against Great Lakes Logistics and Transportation, LLC ("Great Lakes"), and Jafar Asary ("Asary") (collectively, "defendants") on December 5, 2023, asserting four breach of contract claims: two against Great Lakes and two against Asary. (See Dkt. 1, Complaint at ¶¶ 10-41). Plaintiff asserts this court has jurisdiction pursuant to 28 U.S.C. §§1391(b)(2) and 84(c)(3) and the forum selection clause in the operative contracts. (See id. at ¶¶ 7-9); (id., Exhs. A & C).

---

[1] Defendants did not appear at the hearing. (See Dkt. 19, Court's Order of April 18, 2024).

Plaintiff served Great Lakes on December 26, 2023, (see Dkt. 7, Proof of Service), and Asary on December 21, 2023. (See Dkt. 8, Proof of Service). Defendants did not file a responsive pleading or otherwise appear in this action. (See, generally, Dkt.). Accordingly, on February 9, 2024, the Clerk entered default against defendants. (See Dkt. 13, Default by Clerk). Plaintiff thereafter filed the instant Motion, requesting the entry of default judgment. (See Dkt. 16, Motion).

Plaintiff, a state-chartered banking corporation in Georgia with Balboa Capital Corporation as one if its divisions, has its principal place of business in California. (See Dkt. 1, Complaint at ¶ 1). Great Lakes is a Michigan limited liability company with its principal place of business in Michigan. (See id. at ¶ 2). Asary resides in Wayne County, Michigan and "was an officer, director, shareholder, agent and/or owner of Great Lakes Logistics." (Id. at ¶ 3).

Plaintiff alleges that prior to June 2022, Great Lakes communicated with MHC Kenworth Kansas City ("Equipment Vendor One") to purchase and finance certain equipment ("Collateral One") for its business. (See Dkt 1, Complaint at ¶ 11). Plaintiff and Great Lakes entered into Equipment Financing Agreement No. 410296-000 ("Agreement No. One") for a loan of $232,480.00[2] for Great Lakes to purchase Collateral One. (See Dkt. 1, Complaint at ¶ 13); (Dkt. 16-1, Declaration of Don Ngo in Support of Motion ("Ngo Decl.") at ¶ 3). Asary concurrently entered into an agreement ("Guaranty No. One") with plaintiff to personally guarantee Agreement No. One. (See Dkt. 1, Complaint at ¶ 21); (Dkt. 16-1, Ngo Decl. at ¶ 4).

Under the terms of Agreement No. One, Great Lakes was required to make 60 monthly payments of $5,336.60, on the 14th day of each month beginning June 17, 2022.[3] (See Dkt. 16-1, Ngo Decl. at ¶ 5); (id., Exhs. A & C). Great Lakes failed to make the monthly payment due on August 14, 2023. (See Dkt. 1, Complaint at ¶ 14); (Dkt. 16-1, Ngo Decl. at ¶ 6); (Dkt. 16-2,

---

[2] Although the Complaint alleges that the amount of the loan was $320,196, (see Dkt. 1, Complaint at ¶ 13), the Ngo Declaration states that the amount was $232,480. (See Dkt. 16-1, Ngo Decl. at ¶ 3).

[3] Although the Complaint alleges the first payment came due on July 14, 2022, (see Dkt. 1, Complaint at ¶ 13), the Ngo Declaration states the date as June 17, 2022. (See Dkt. 16-1, Ngo Decl. at ¶ 5).

Declaration of Jared T. Densen ("Densen Decl.") at ¶ 5). Under the terms of Agreement No. One, plaintiff is entitled to recover all past due payments as well as the remaining loan balance. (See Dkt. 1, Complaint at ¶ 15); (id., Exh. A at 3); (Dkt. 16-1, Ngo Decl. at ¶ 7).

Plaintiff also alleges that prior to January 2023, Great Lakes communicated with MHC Kenworth Joplin ("Equipment Vendor Two") to purchase and finance certain equipment ("Collateral Two") for its business. (See Dkt 1, Complaint at ¶ 27). Plaintiff and Great Lakes entered into Equipment Financing Agreement No. 410296-001 ("Agreement No. Two") for a loan of $87,391.03[4] for Great Lakes to purchase Collateral Two. (See id. at ¶ 28); (Dkt. 16-1, Ngo Decl. at ¶ 9). Asary concurrently entered into an agreement ("Guaranty No. Two") with plaintiff to personally guarantee Agreement No. Two. (See Dkt. 1, Complaint at ¶ 37); (Dkt. 16-1, Ngo Decl. at ¶ 10). Under the terms of Agreement No. Two, Great Lakes was required to make 60 monthly payments of $2,001.06, on the 16th day of each month beginning February 16, 2023.[5] (See Dkt. 16-1, Ngo Decl. at ¶ 11); (id., Exhs. D & F). Great Lakes failed to make the monthly payment due on September 16, 2023. (See Dkt. 16-1, Ngo Decl. at ¶¶ 11-12); (Dkt. 16-2, Densen Decl. at ¶ 8). Under the terms of Agreement No. Two, plaintiff is entitled to recover all past due payments as well as the remaining loan balance and late charges. (See Dkt. 1, Complaint at ¶¶ 30-31); (id., Exh. C at 3); (Dkt. 16-1, Ngo Decl. at ¶ 12).

## LEGAL STANDARD

Rule 55(a) of the Federal Rules of Civil Procedure[6] provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the Clerk enters default pursuant to Rule 55(a), the court may enter a default judgment against the party.

---

[4] Although the Complaint alleges that the amount of the loan was $120,063.60, (see Dkt. 1, Complaint at ¶ 28), the Ngo Declaration states that the amount was $87,391.03. (See Dkt. 16-1, Ngo Decl. at ¶ 9).

[5] Although the Complaint alleges the first payment came due on March 9, 2023, (see Dkt. 1, Complaint at ¶ 28), the Ngo Declaration states the date as February 16, 2023. (See Dkt. 16-1, Ngo Decl. at ¶ 11).

[6] Any reference to "Rule" herein refers to the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 55(b)(2). "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." PepsiCo, Inc. v. California Sec. Cans, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) (same). The scope of relief is limited to the specific demand in the complaint. See Fed. R. Civ. P. 54(c).

Even where well-pleaded allegations exist, "[t]he district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion as to whether default judgment should be entered, the court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the "Eitel factors").

With these standards in mind, the court now turns to the arguments raised by plaintiff in its Motion.

## DISCUSSION

I.  LOCAL RULE 55-1.

In this District, applications for default judgment must include: "(a) [w]hen and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent person[;] (d) [t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party if required by F.R.Civ.P. 55(b)(2)." L.R. 55-1.

Here, plaintiff has satisfied the procedural requirements for entry of default judgment. Specifically, plaintiff has established that: (a) the Clerk entered default against defendants, (see Dkt. 13, Default by Clerk); (b) the default was based on defendants' failure to respond to the Complaint, (see id.); (c) neither defendant is an infant or an incompetent person, (see Dkt. 16-2, Densen Decl. at ¶ 4); (d) neither defendant is in active military service, (see id.); (id., Exh. G); and

(e) defendants were served with the Summons and Complaint. (See Dkt. 7, Proof of Service as to Great Lakes); (Dkt. 8, Proof of Service as to Asary).

II. THE EITEL FACTORS.

Having concluded that default was properly entered, the court will now determine whether to enter default judgment against defendants.

    A.     The Possibility of Prejudice to Plaintiff.

The first Eitel factor considers whether plaintiff will suffer prejudice if default judgment is not entered. Here, plaintiff would suffer prejudice if default judgment is not entered because it "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." Electra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Accordingly, this factor weighs in favor of granting default judgment

    B.     The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint.

"Under an Eitel analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010). These two factors require a plaintiff to "state a claim on which the [plaintiff] may recover." See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011). Here, plaintiff has sufficiently alleged a claim for breach of contract. First, Agreement Nos. One and Two, and Guaranty Nos. One and Two (collectively, "Subject Agreements") establish the existence of contracts which plaintiff and defendants entered into. (See Dkt. 1, Complaint at ¶¶ 13, 21, 28 & 37); (see id., Exhs. A, B, C & D).

Second, plaintiff performed its obligations under the contracts by providing the funds to defendants. (See Dkt. 1, Complaint at ¶¶ 16, 22, 32 & 38); (Dkt. 16-1, Ngo Decl. at ¶¶ 7, 13). Third, defendants breached the Subject Agreements by failing to make the loan payments. (See Dkt. 1, Complaint at ¶¶ 14, 23, 29 & 39); (Dkt. 16-1, Ngo Decl. at ¶¶ 5, 11). Finally, plaintiff

alleges that it suffered damages as a result of the breaches. (See, e.g., Dkt. 1, Complaint at ¶¶ 17-18 & 33-34).

### C. The Amount of Money at Stake.

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). Here, plaintiff seeks $359,117.59 in damages for defendants' breaches of the Subject Agreements. (See Dkt. 16-1, Ngo Decl at ¶¶ 7 & 13). The amount of money at stake is reasonable in relation to defendants' conduct, and does not weigh against the entry of default judgment.

### D. The Possibility of a Dispute Concerning Material Facts.

Upon entry of default, the well-pled allegations in the complaint are taken as true, except those relating to damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, "[t]he district court is not required to make detailed findings of fact." Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Since defendants never answered or otherwise appeared in this action, (see, generally, Dkt.), it is unclear whether there would be any genuine dispute over material facts.

### E. Whether the Default Was Due to Excusable Neglect.

Excusable neglect is an equitable concept that takes account of factors such as "prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). Here, there is no evidence that defendants failed to defend this action due to excusable neglect. Defendants received notice of the Complaint, (see Dkt. 7, Proof of Service); (see Dkt. 8, Proof of Service), and failed to respond or otherwise defend

themselves despite having notice of this action.[7] (See, generally, Dkt.). In short, this factor weighs in favor of default judgment.

F. The Strong Policy Favoring Decisions on the Merits.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's Fund, 1996 WL 75314, *3 (N.D. Cal. 1996). Defendants' failure to answer the Complaint makes a decision on the merits impractical, if not impossible. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Under Rule 55(b), termination of a case before hearing the merits is permitted whenever a defendant fails to defend an action. See Fed. R. Civ. P. 55(b). The court therefore finds that entry of default judgment is appropriate in this action.

G. Summary of Eitel Factors.

On balance, the Eitel factors weigh in favor of granting default judgment. The court addresses plaintiff's requested remedy below.

III. REMEDIES.

A. Damages.

"To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit." Yelp Inc. v. Catron, 70 F.Supp.3d 1082, 1100-01 (N.D. Cal. 2014). "This . . . requires the Court to assess both (1) the nature of the relief requested in the Complaint and (2) the evidence [plaintiff] has submitted to substantiate its damages beyond averments in the pleadings." Stewart Title Guar. Co. v. 2485 Calle Del Oro, LLC, 2018 WL 3222610, *20 (S.D. Cal. 2018). Courts apply the preponderance of the evidence standard in determining a plaintiff's damages. See, e.g., Conecciones Agricolas S. De R.L. De C.V. v. Organic All., 2014 WL 1954269, *3 (S.D. Cal. 2014) ("Upon review of Ayers' declaration and the account liquidation table, the Court finds that Plaintiff [on default judgment] has not established by a preponderance of the evidence that it is entitled to $134,440.56 in damages."); F.D.I.C. v.

---

[7] Defendants were also served with the Motion, (see Dkt. 16-4, Proof of Service), and they did not respond. (See, generally, Dkt.).

Hawker, 2013 WL 1314153, *3 (E.D. Cal. 2013) ("I find that [plaintiff on default judgment] has proved by a preponderance of the evidence the amount of the damages for each loan as described i[n] more detail below."). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, *12 (N.D. Cal. 2007).

Here, plaintiff seeks $359,117.59 in damages for defendants' breaches of the Subject Agreements. (See Dkt.16, Memorandum of Points & Authorities ("Memo") at 2-3); (See Dkt. 16-1, Ngo Decl at ¶¶ 7 & 13); (Dkt. 1, Complaint at ¶¶ 17, 24, 33, 40). Based on the Subject Agreements, accounting records, and supporting declarations, (see Dkt. 16-1, Ngo Decl. at ¶¶ 7 & 13); (id. at Exhs. A-F), the court finds that plaintiff has proven, by a preponderance of the evidence, that it has suffered a loss of $359,117.57[8] for defendants' failure to pay for the loans plaintiff provided.

B. Interest.

Plaintiff also seeks prejudgment interest at the rate of 10% per annum. (See Dkt. 16, Motion at 2-3). A district court "may exercise discretion when awarding prejudgment interest, but [] generally it should be granted unless: it would lead to an unwarranted delay of litigation, there was no actual loss, there is no proof of deprivation of use, the parties stipulated to exclude prejudgment interest, or there was bad faith." Cold Smoke Capital, LLC v. Gross, 2014 WL 12558852, *3 (C.D. Cal. 2014) (citation omitted) (finding a prejudgment interest rate of 10% per annum rate based on California Civil Code § 3289 reasonable). Here, none of the factors weigh against the granting of prejudgment interest. California Civil Code § 3289 "provides that where a contract does not designate a legal rate of interest, a rate of 10 percent per annum applies after a breach." Cold Smoke Capital, 2014 WL 12558852, at *3. Under the circumstances, the court finds that plaintiff is entitled to prejudgment interest at a rate of 10% per annum, accruing from

---

[8] Plaintiff's calculations appear to be slightly off. For the breaches of Agreement and Guaranty Nos. One, defendants missed 47 payments at $5,336.60 for a total loss of $250,820.20 (47 x $5,336.60). (See Dkt. 16-1, Ngo Decl. at ¶¶ 5-6). Therefore, the damages amount is $359,117.59 ($250,820.20 plus $108,297.37).

8

the date of the breaches of the Subject Agreements,[9] to the date of judgment. (See Dkt. 16-2, Densen Decl. at ¶¶ 5 & 8) (presenting tables of interest rate calculations).

C. Attorney's Fees and Costs.

Plaintiff seeks $14,382.34[10] in attorney's fees and $603.00 in costs. (See Dkt. 16, Memo at 16); (Dkt. 16-2, Densen Decl. at ¶¶ 7 & 10) (presenting table of attorneys' fees calculations); (id. at Exh. H). The Subject Agreements provide for the recovery of attorney's fees. (See Dkt. 16-1, Exhs. A at ¶¶ 19-20, B, D at ¶¶19-20, E). In default judgment actions, the court shall award attorney's fees pursuant to the fee schedule provided in Local Rule 55-3. See L.R. 55-3 ("When a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule[.]"). According to the fee schedule, where a judgment is over $100,000.00, reasonable attorney's fees will be $5,600.00, plus two percent of the amount over $100,000.00. See id. Here, attorney's fees based on the principal amount of $250,820.22, based on the breach of Agreement and Guaranty One, amounts to $8,616.40 (i.e., $5,600 + ($150,820.22 x 0.02)). (See Dkt. 16-2, Densen Decl. at ¶ 7) (presenting table of attorney's fee calculations). Fees for breach of Agreement and Guaranty Two, based on the principal amount of $108,297.37, amounts to $5,765.94 (i.e., $5,600 + ($8,297.37 x 0.02)). (See Dkt. 16-2, Densen Decl. at ¶ 10) (presenting table of attorney's fee calculations).

Finally, plaintiff seeks costs of $603.00 for the filing fee and service of process, (see Dkt. 16-2, Densen Decl., at ¶ 7 & Exh. H), which the court finds are reasonable. In short, the court awards plaintiff a total judgment of $374,102.91 plus prejudgment interest at a rate of 10% per annum.

---

[9] For Agreement No. One, the date of the breach is August 17, 2023, (see Dkt. 16-2, Densen Decl. at ¶ 5) (presenting tables of interest rate calculations), and for Agreement No. Two, the date of the breach is September 16, 2023. (See id. at ¶ 8).

[10] Plaintiff seeks $8,616.40 in attorneys' fees for breach of Agreement No. One, and $5,765.94 for breach of Agreement No. Two. (See Dkt. 16, Memo. at 16); (Dkt. 16-2, Densen Decl. at ¶¶ 7 & 10)

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion **(Document No. 16)** is **granted** as set forth in this Order.

2. Judgment shall be entered in favor of plaintiff **Ameris Bank** and against defendants Great Lakes Logistics and Transportation, LLC and Jafar Asary.

3. Defendants, who are jointly and severally liable, shall pay plaintiff the total amount of **$374,102.91** which is comprised of the following: (1) $359,117.57 in damages for the principal amount owed; (2) attorney's fees in the amount of $14,382.34; and (3) litigation costs in the amount of $603.00, plus prejudgment interest at a rate of 10% per annum.

4. Plaintiff shall serve defendants with a copy of this Order and the Judgment filed contemporaneously with the filing of this Order in such a manner as to make them operative in any further proceedings.

Dated this 24th day of June, 2024.

/s/
Fernando M. Olguin
United States District Judge